# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | )  |
|---|---|
| E.G., | ) |
| | ) |
|         PLAINTIFF, | ) |
| | )   Civil No. 17-00425 RCL |
| v. | ) |
| | ) |
| DEPARTMENT OF THE AIR FORCE, | ) |
| | ) |
|         DEFENDANT. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff E.G. filed this action against the defendant U.S. Department of the Air Force ("Air Force") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking all records from an Administrative Discharge Board (the "Board") proceeding where the plaintiff testified that Air Force Staff Sergeant John M. Broome sexually assaulted her. Before the Court is the Air Force's motion for summary judgment. Upon consideration of the motion, the opposition and reply thereto, the attachments and affidavits filed in support of each party's arguments, and the entire record of this case, the Court **GRANTS** the defendant's motion. The Court explains its reasoning in the analysis below.

I.     **BACKGROUND**

The plaintiff testified in the Board proceedings from June 23 to the 25, 2015, which were held to determine if SSgt. Broome should be retained in the Air Force. The Board decided to retain SSgt. Broome. The plaintiff filed a FOIA request with the Air Force shortly thereafter, seeking all documents pertaining to the Board proceedings. The Air Force granted the plaintiff's request in part, releasing only a copy of her testimony at the Board proceedings and denying the remainder of her request. The Air Force initially claimed that FOIA Exemption 5 and 6 preclude the release

1

of further information, but after a subsequent appeal by the plaintiff, conceded that only Exemption 6 applied to the records[1]—still, the Air Force declined to release any further records to the plaintiff. One year after this denial, the plaintiff filed this lawsuit. The issue before this court is whether the Board proceeding records fall under FOIA Exemption 6, and thus were properly withheld by the Air Force.

## II. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). As applied to a FOIA case, an agency defendant may be entitled to summary judgement if it demonstrates that (1) no material facts are in dispute, (2) it has conducted an adequate search for responsive records, and (3) each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure. *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d, 18 (D.D.C. 2012) (*citing Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980)).

An agency claiming an exemption to FOIA bears the burden of establishing the exemption applies. *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979). An agency satisfies that burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the

---

[1] During this case, the Air Force initially claimed in its Answer that Exemption 5 would apply to two legal reviews they understood to be sought by the plaintiff; the plaintiff clarified in later pleadings that she is only seeking records regarding the Board proceedings and *not* the legal reviews, thus making any analysis of Exemption 5 unnecessary.

2

record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotation marks omitted).

### b. Exemption 6

FOIA Exemption 6 protects against the disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Thus, Exemption 6 requires an agency to prove both the nature of the files and that the files' disclosure "would constitute a clearly unwarranted invasion of personal privacy." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599-603 (1982). The second step is to balance "the protection of an individual's right to privacy" against "the preservation of the public's right to government information." *Wash. Post Co.*, 456 U.S. at 599. The "public interest" weighed is limited to the "core purpose" for which Congress enacted the FOIA, i.e., to "shed . . . light on an agency's performance of its statutory duties." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). With Exemption 6, however, "the presumption in favor of the disclosure is as strong as can be found anywhere in the Act." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).

### III. ANALYSIS

The plaintiff claims that the documents pertaining to the Board proceedings do not fall under Exemption 6, because the information is not "personnel, medical or similar" files. 5 U.S.C. § 552(b)(6). Alternatively, she argues that the records should be released as a "routine use" under Air Force Instruction (AFI) 51-201, para. 7.24. The Plaintiff believes the Board proceedings were a sham, and thus the requested information was wrongfully withheld. The Air Force denies these claims, and argues that SSgt. Broome has a substantial privacy in these records that, if released, would violate Exemption 6. Lastly, the Air Force contends that the records are not segregable as

they relate entirely to SSgt. Broome; the plaintiff does not argue for partial release of the records. The Court holds that the records of the Board proceedings do fall under Exemption 6, and are excluded from disclosure under FOIA; additionally, the "routine use" language cited by the plaintiff is an extension of FOIA and that claim also fails on the same grounds.

### a. Exemption 6

This Court determines *de novo* if any agency has properly withheld information under a FOIA exemption. *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). The agency claiming the exemption must establish that the exemption applies. *Fed. Open Mkt. Comm.*, 443 U.S. at 352. Exemption 6 protects against the disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Court will first determine if the Board proceeding records are personnel or similar files which qualify for the exemption. Then, the Court will determine if their release would constitute a clearly unwarranted invasion of privacy by determining the substantiality of SSgt. Broome's privacy interest in the records, *see Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 974 (D.C. Cir. 1989), and then weighing that interest against the public's right to disclosure. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976).

### i. Are the records personnel or similar files?

The Air Force argues that the requested records are personnel files, as administrative discharge proceedings are a personnel process overseen by the personnel office, and the records of the Board proceedings are maintained in a file system governed by the Air Force Personnel Center Privacy Act. ECF No. 14-4, at 2. The plaintiff argues that, per AFI 36-2608, Military Personnel Records System (26 October 2015), an airman's Military Personnel Record contains

only administrative discharge proceeding records if the process results in discharge; Broome was retained, therefore the Board proceedings are not part of his personnel file.

Alternatively, the Air Force contends that whether or not the requested records are *actually* personnel files, they are similar enough to be covered by U.S.C. Section 552(b)(6) (exempting "personnel and medical files and similar files"). The Air Force claims that all the records relate to SSgt. Broome, and thus may not be released. ECF No. 14-4, at 2. The plaintiff disagrees, arguing that the requested records are *not* similar to personnel files, but are akin to a trial record; further, the information contained in the records is not solely about Broome, but also about the actions of counsel and the legal advisor to the proceedings.

Exemption 6 is broad, as it applies to "detailed Government records on an individual which can be identified as applying to that individual." *Wash. Post Co.*, 456 U.S. at 602, *citing* H. R. Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966) (internal quotations omitted). It is not limited by the "label of the file," but by the "balancing of private against public interests . . ." *Id.* at 599.

The administrative discharge proceeding records are files covered by Exemption 6. They are detailed government records about SSgt. Broome that, if released, would be identified as applying to him. The plaintiff is correct that the administrative discharge proceedings mirror the judicial process; however, it is still an *administrative* process[2]—regardless, the records produced focus on SSgt. Broome. While the records likely also relate to individuals other than SSgt. Broome, the standard does not demand the records relate *solely* to SSgt. Broome. The Board proceeding records were all generated relative to a review of SSgt. Broome's status as an enlisted member and

---

[2] The Court notes that AFI 51-201 clearly distinguishes between trials and administrative discharge proceedings. The regulation states that it applies to "cases where allegations against a suspect are disposed of other than by trial . . ." and goes on to mention, specifically, "records and information related to . . . administrative discharge proceedings . . . ." AFI 51-201, ¶7.24.

the decision to retain him in the Air Force. Broome was the focus of the proceedings. As such, it does not matter whether the requested files are 'personnel files' or not according to Air Force regulation—they are sufficiently similar in nature that they fall under the purview of Exception 6, as Congress intended the exception to have a broad reach.

### ii. Would the release of the records constitute a clearly unwarranted invasion of personal privacy?

The D.C. Circuit has laid out a clear test for determining the personal and public interests at stake, and for weighing the two:

> To establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy, the court first asks whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest. If a significant privacy interest is at stake, the court then must weigh that interest against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy. The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contributing significantly to public understanding of the operations or activities of the government. Thus, unless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue.

*Nat'l Ass'n of Home Builders*, 309 F.3d at 33-34 (D.C. Cir. 2002) (internal quotations and citations omitted). Thus, the Court will first determine if SSgt. Broome has a substantial privacy interest in the records, and then weigh that interest against what public interest in their disclosure might exist.

### 1. SSgt. Broome's Privacy Interest

The Air Force argues that SSgt. Broome has a substantial privacy interest in the records, as they are among his employment records, and they relate to allegations of sexual assault that would be embarrassing to SSgt. Broome if released. The plaintiff argues that because the records are not personnel files, no substantial privacy interest exists; further, because SSgt. Broome has

posted about the proceedings on social media, he has forfeited any expectations of privacy regarding the Board proceedings.

Congress intended to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *Wash. Post Co.*, 456 U.S. at 599. Much of the case law cited by the Air Force applies to Exemption 7(C), which is quite similar to Exemption 6. However, Exemption 7(C) is "somewhat broader" than the privacy language in Exemption 6, *Reporters Comm. for Freedom of the Press*, 489 U.S. at 756, and the burden of establishing an invasion of privacy for Exemption 6 is "heavier than the standard applicable to Exemption 7(C)." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 172 (1991).

SSgt. Broome arguably has a "strong interest in not being associated unwarrantedly with alleged criminal activity." *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.D.C. 1984). While this specific privacy interest is typically tied to Exception 7(C), as it relates to the release of law enforcement records, this specific privacy interest is not *only* protected by 7(C). Surely if an individual has a privacy interest for this purpose related to law enforcement records, such an interest would also exist in relation to an administrative discharge proceeding involving alleged criminal conduct.

The Air Force contends that SSgt. Broome retains a recognized privacy interest in the records because they are part of his employment records. In *Stern*, the D.C. Circuit recognized "that an employee has at least a minimal privacy interest in his or her employment history and job performance evaluations." 737 F.2d at 91. While the parties have extensively debated whether the files at issue fall within or outside the Air Force's personnel files, the disclosure of the records at issue could still result in "embarrassment or stigma wrought by negative disclosures" and also reflects SSgt. Broome's "more general interest in the nondisclosure of diverse bits and pieces of

information, both positive and negative, that the government, acting as an employer, has obtained and kept in the employee's personnel file." *Id.* Again, regardless of the semantics of what is and is not in Broome's personnel file, these records were created by the government as Broome's employer and in review of his actions as an employee of the Air Force. Therefore, they are similar enough that the same privacy interest recognized by the court in *Stern* exists in the present files.

Lastly, the affidavits show that it was not Broome, but Broome's friends and family, who posted about the *outcome* of the proceedings on social media. ECF No. 20-5, at 2. While more detailed posts may have militated against a finding of Broome retaining a strong privacy interest in the files, the actual posts are not provided and it is unclear what exactly they disclosed. The outcome of the proceedings was made public by these filings and by the fact that Broome remains in the Air Force—therefore, a post indicating the Board's decision is not enough to find that Broome forfeited any expectation of privacy concerning the proceedings.

It is clear that Broome has greater than a *de minimis* privacy interest in the files. That privacy interest will now be compared with the public's interest in the files.

### 2. Public Interest

The Air Force recognizes a "cognizable public interest in records relating to how the military responds to sexual assault," ECF No. 14, at 14, but found that interest to be negligible because the release of a single proceeding would not illustrate how the agency executes its mission. ECF No. 14-4, at 2. The plaintiff points to several examples of alleged Air Force misconduct that supposedly demonstrate the Board proceedings were "just a sham conducted for the purpose of saying the Air Force is taking sexual assault seriously." ECF No. 20, at 5. The plaintiff claims the release of the records will serve the public interest of "keeping victims informed of, and confident in, the legitimacy of proceedings in which they participate," ECF No. 20-3, at 5, and would assist

her in lobbying Congress to "preclude military legal advisors (or judges) from ordering victims to be interviewed by counsel against their will." ECF No. 20-3, at 6.

The relevant public interest to be weighed against SSgt. Broome's privacy interest is "the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal quotation marks and citations omitted). The burden of establishing a legitimate public interest falls on the plaintiff. *Goldstein v. Treasury Inspector Gen. for Tax Admin.*, 172 F. Supp. 3d 221, 231 (D.D.C. 2016). The plaintiff must provide "more than a bare suspicion . . . that the alleged Government impropriety might have occurred." *Barbosa v. Drug Enf't Admin.*, 541 F. Supp. 2d 108, 11 (D.D.C. 2008) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)). Instead, the plaintiff must provide "evidence that would warrant a belief by a reasonable person that" the allegations of misconduct are true. *Favish*, 541 U.S. at 174.

The plaintiff's argument that a public interest in these files exists is muddled. She alleges that the Air Force acted in bad faith by (1) initially refusing to provide her with a copy of a Military Protective Order (MPO) against SSgt. Broome before eventually providing it to her; (2) initially refusing to permit the plaintiff's counsel from representing her at the Board proceedings and attempting to exclude him from attending the proceedings; (3) inappropriately ordering the plaintiff to interview with SSgt. Broome's counsel; and (4) limiting the plaintiff's role in the proceedings to that of a witness and not informing her immediately of the outcome of the proceedings. The plaintiff also argues that the Air Force's reluctance to alter her travel plans to the proceedings so she could avoid flying with SSgt. Broome's family and friends demonstrates the agency's "hostility and retaliation." ECF No. 20-3, at 4. The plaintiff appears to believe these

allegations would support a release of the entirety of the Board proceeding records, which would illustrate the Air Force's "sham" proceedings. ECF No. 20, at 2.

The plaintiff does not explain exactly what evidence, besides her declaration restating the allegations, supports most of these assertions—and a review of the exhibits is not convincing. Several of the plaintiff's accusations are that the Air Force initially refused to do something (see accusations (1), (2), and (4) above) but the plaintiff's requests were eventually granted. It is unclear how other accusations relate to the Board proceedings at all, such as the travel arrangements and the outcome notification. Further, the release of the requested records would not illustrate the decision-making process behind such decisions. Even if these mere assertions were taken as truth, it is not clear that these events would prove the proceedings were conducted in bad faith. Rather, myriad explanations could exist for many of the plaintiff's allegations. In the absence of additional sufficient evidence, there is little "counterweight on the FOIA scale" for the Court to balance against SSgt. Broome's privacy interest. *Favish*, 541 U.S. at 174-75.

The Court also finds merit in the Air Force's argument that, in this case, the release of a singular proceeding would not substantially serve the public interest. In *Kimberlin v. DOJ*, the D.C. Circuit considered the "rank of the public official involved and the seriousness of the misconduct alleged" when holding that the public interest in the DOJ's investigation of a single lower-level staff attorney's potential misconduct was not sufficient to outweigh the attorney's personal privacy interest. 139 F.3d 944, 949 (D.C. Cir. 1998). In contrast, the Supreme Court found a significant public interest in the disclosure of a multitude of summaries of Air Force Academy Honor Code violations, as the summaries could illustrate a pattern of disciplinary procedures at the Academy. *Rose*, 425 U.S. at 355, 367-370 (1976), *see also Hunt v. Fed. Bureau of Investigation*, 972 F. 2d 286, 288-89 (9th Cir. 1992) (holding that a "single file" would not "shed

any light on whether all such FBI investigations are comprehensive or whether sexual misconduct by agents is common."). Similarly, the release of SSgt. Broome's records would be insufficient to show a pattern of misconduct by the Air Force in conducting administrative discharge boards.

In sum, the plaintiff has not met her burden to set out in clear terms how the release of the Board proceeding records would serve the public interest and contribute significantly to the public's understanding of the Air Force's operations. SSgt. Broome's substantial privacy interest outweighs the public interest in the records' disclosure, demonstrating that the disclosure of the records would constitute an unwarranted invasion of privacy against SSgt. Broome. As such, the Air Force properly declined under Exemption 6 to release these documents in response to the plaintiff's FOIA request.

### b. 'Routine Use' Argument

Alternatively, the plaintiff argues that the records must be disclosed to her as a "routine use" per the Privacy Act, U.S.C. § 552a(b)(3), and AFI 51-201, ¶7.24, Administration of Military Justice, which provides that "administrative discharge proceedings may be disclosed as a routine use to victims and witnesses of a crime . . . ." The plaintiff argues that, as a victim of sexual assault who was asked to testify as a witness, she has a right to the records. The Air Force disagrees with the plaintiff's reading of AFI 51-201, arguing that the regulation simply requires the same balancing test as Exemption 6.

The Privacy Act states that agencies may disclose records for a "routine use," U.S.C. § 552a(b)(3), defined as "a purpose that is compatible with the purpose for which it was collected." U.S.C. § 552(a)(7). The routine use of the records in any system covered by the Privacy Act, such as the records at issue, must be published in the Federal Register. U.S.C. § 552a(e)(4)(D). Therefore, the routine use exception consists of two prongs: "compatibility" and "publication."

*Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 47 (D.C. Circ. 2009). In the present case, the records were collected for the purpose of determining whether to retain SSgt. Broome in the Air Force. The plaintiff does not specifically argue what purpose she has for the records in her "routine use" argument.

AFI 51-201, ¶7.24, is broader than the plaintiff states in her pleadings. It calls for exceptions to the Privacy Act, such as the "routine use" exception, to be treated similarly to exemptions under FOIA. It requires that "[v]ictims and witnesses . . . be provided as much relevant information as possible, consistent with the privacy rights of the accused." *Id.* It further calls on the decision maker to consider the "unique facts and circumstances" of the case, as well as "the Air Force's interest in fostering cooperation of victims and witnesses in the instant case, whether the accused has made any disclosures . . . that would diminish his/her expectation of privacy, and other relevant factors" when determining if records shall be released. *Id.* As the Air Force argues, this balancing test is substantially similar to the Exemption 6 test conducted above, and thus the outcome remains the same. The Court agrees, and holds that the Air Force did not err in refusing to release the requested records under the routine use exception.

## IV. CONCLUSION

For the aforementioned reasons, the Air Force's motion for summary judgment will be **GRANTED**. This case will be **DISMISSED**. A separate Order consistent with this Memorandum Opinion shall issue this date.

It is **SO ORDERED**.

Date: March 22, 2018

Royce C. Lamberth
United States District Judge